UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN R. RANELLI and G. ASHLEY
DAVIS-RANELLI,
        Plaintiffs,

v.                                                                CA 09-497-ML

CARNEGIE TOWER DEVELOPMENT
COMPANY, INC., CARNEGIE ABBEY
CLUB ACQUISITION I LP, BUTTONWOOD
ACQUISITION LP, and MORTGAGE GUARANTEE
& TITLE COMPANY,
        Defendants.


DR. JAMES YASHAR,
        Plaintiff,

v.                                                                CA 09-498-ML

CARNEGIE TOWER DEVELOPMENT
COMPANY, INC., CARNEGIE ABBEY
CLUB ACQUISITION I LP, and
DARROWEVERETT LLP,
        Defendants.


RICHARD J. MARTIN and JODY E.
MARTIN,
       Plaintiffs,

v.                                                                CA 09-499-ML

CARNEGIE TOWER DEVELOPMENT
COMPANY, INC., CARNEGIE ABBEY
CLUB ACQUISITION I LP, and

MORTGAGE GUARANTEE & TITLE
COMPANY,
        Defendants.

## MEMORANDUM AND ORDER

    These matters are before the Court on motions to dismiss, or in the alternative, to stay and

compel arbitration, filed by Carnegie Tower Development Company, Inc., ("CTDC"), Carnegie Abbey Club Acquisition I LP, Buttonwood Acquisition, LP, Mortgage Guarantee & Title Company, and Darroweverett LLP, (collectively "Defendants").[1]

## 1. Standard of Review

The summary judgement standard of review is applicable to a motion to dismiss or, alternatively, to stay and compel arbitration. Cogent Computer Systems, Inc. v. Turbochef Technologies Inc., C.A. No. 06-280 S, 2008 WL 219343 (D.R.I. Jan. 24, 2008); Boulet v. Bangor Securities Inc., 324 F. Supp. 2d 120 (D. Me. 2004). The Court will therefore consider Defendants' motions under that familiar standard.

## II. Facts

The relevant facts are not in dispute. Each Plaintiff executed a purchase and sale agreement with CTDC for a condominium unit at Carnegie Tower at Carnegie Abbey in Portsmouth, Rhode Island. Plaintiffs made partial payments of the total purchase price for their respective units to CTDC and its related entities. The condominiums were sold pursuant to a public offering statement issued in 2004 and amended in 2005. The public offering statements were incorporated into each purchase and sales agreement. Section 13 of the purchase and sale agreements contains an arbitration provision which provides, in part, that "any and all disputes . . . . arising out of this Agreement . . . including . . . statutory causes of action . . . shall be resolved by mandatory and binding arbitration . . . ." Amended Complaints, Exhibit A § 13. Section 13 of the purchase and sale agreements also states that the arbitration provisions are governed by the

---

[1] The Court treats these three matters together in one decision because the facts and legal arguments in each matter are not materially different.

2

terms of the Federal Arbitration Act. Id.

On or about July 15, 2009, after each Plaintiff had executed the purchase and sale agreement, but prior to the closing, CTDC issued a supplement[2] to the public offering statement. On July 21, 2009, after receiving the amendment, each Plaintiff sent a letter ("cancellation letter") to CTDC and its related entities, purporting to cancel the purchase and sale agreements and demanding a refund of payments made to CTDC and its related entities. CTDC did not cancel any of the purchase and sales agreements nor did CTDC or any related entity issue any refund. Plaintiffs then filed their actions in this Court.

### III. The Complaints and the Parties' Arguments

The complaints include a claim for a declaratory judgment asking the Court to declare that Plaintiffs have a right to cancel the purchase and sales agreements and a claim that the purchase and sales agreements are illusory and therefore not binding.[3] In their motions, Defendants contend that the terms of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., and § 13 of the purchase and sale agreements, require the Court to dismiss the complaints, or in the alternative, to stay the actions and compel arbitration. Defendants argue that, because Plaintiffs make no allegations concerning the validity of the arbitration clause itself, and because Plaintiffs' claims arise out of the purchase and sale agreements, the determination of rights under the purchase and sales agreements must be left to the arbitrator. Plaintiffs counter that the Rhode Island Condominium Act, R.I. Gen. Laws, § 34.36.1-1.01 et. seq., ("Condominium Act")

---

[2] In the complaints and papers, Plaintiffs refer to this as both as supplement and an amendment. For consistency purposes, the Court refers to it as an amendment.

[3] Plaintiffs Richard and Jody Martin do not make a claim that the purchase and sale agreement is illusory.

provides them with an unconditional statutory right to cancel the purchase and sales agreements. Plaintiffs conclude that the purchase and sales agreements, and the corresponding arbitration provisions, were immediately void upon CTDC's receipt of the cancellation notices, thus Plaintiffs need not arbitrate their claims.

### IV. Analysis

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is well established that when an arbitration clause is included as part of a contract, the FAA promotes a liberal policy in favor of the enforcement of such a clause. Campbell v. General Dynamics Government Systems Corp., 407 F.3d 546 (1st Cir. 2005). Where issues before a court are arbitrable, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3. "[A] challenge to the validity of the contract itself is subject to arbitration and that allocation of authority to the arbitrator will . . . be respected by the court." Awuah v. Coverall North America, Inc., 554 F.3d 7, 10 (1st Cir. 2009). A "federal court must not remove from the arbitrator[ ] consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." Large v. Conseco Financing Servicing Corp., 292 F.3d 49, 53 (1st Cir. 2002) (internal quotation marks and citation omitted); see also Rosenberg v. Merrill Lynch, Pierce, Fenner, and Smith, Inc., 170 F.3d 1, 14 (1st Cir. 1999) (noting presumption that "arbitration provides a fair and adequate mechanism for enforcing statutory rights").

In an attempt to distinguish their cases and remove their claims from the arbitral forum,

Plaintiffs urge this Court to "extend" the First Circuit's holdings in <u>Large</u> and <u>Thompson v. Irwin Home Equity Corp.</u>, 300 F.3d 88 (1st Cir. 2002), and to conclude that the Condominium Act provides Plaintiffs with an unconditional and absolute statutory right of cancellation.

The Condominium Act provides that

> [a] person required to deliver a public offering statement pursuant to § 34-36.1-4.02(c) shall provide a purchaser of a unit with a copy of the public offering statement and all amendments thereto before conveyance of that unit, and not later than the date of any contract of sale. Unless a purchaser is given the public offering statement more than ten (10) days before execution of a contract for the purchase of a unit the purchaser, before conveyance, <u>may</u> cancel the contract within ten (10) days after first receiving the public offering statement.

R.I.G.L. § 34-36.1-4.08(a) (emphasis added). Plaintiffs argue that their receipt of the amendment to the public offering statement triggers an unconditional and automatic right of cancellation which they timely exercised pursuant to § 34-36.1-4.08(a). Plaintiffs conclude that, as a result of their sending the cancellation letters, the purchase and sales agreement and the applicable arbitration provision contained therein expired.

Plaintiffs' argument is a non-starter. The Court is not convinced that the First Circuit's reasoning in <u>Large</u> and <u>Thompson</u> is readily applicable, by "extension" or otherwise, to the Condominium Act. <u>Large</u> and <u>Thompson</u> addressed the statutory right of rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et. seq.</u> Congress' purpose in enacting TILA was to "assure a meaningful disclosure of credit terms . . . and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Congress found that "economic stabilization would be enhanced . . . by the informed use of credit." <u>Id.</u> TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions. <u>McKenna v. First Horizon Home Loan Corp.</u>, 475 F.3d 418 (1st Cir. 2007).

5

In general, TILA was enacted with the goal of enhancing consumer protection by ensuring that creditors inform debtors of relevant information regarding certain credit transactions.

In contrast, the Condominium Act "creat[ed] in Rhode Island the condominium form of property ownership." Health Management Co., Inc. v. R.I. Department of Environmental Management, No. P.C. 05-3232, 2006 WL 1321274 at *6 (R.I. Super. Ct. May 15, 2006). The Condominium Act "essentially incorporate[s] the language contained in the Uniform Condominium Act...." American Condominium Association, Inc. v. IDC, Inc., 844 A.2d 117, 127 (R.I. 2004), clarified and aff'd on reargument, 870 A.2d 434 (R.I. 2005) ("IDC II"). The Condominium Act was a "careful attempt by the Legislature to strike a balance between a declarant's need for flexibility in creating a condominium and the interests of each individual unit owner in the enjoyment of his or her particular parcel of real estate." IDC II, 870 A.2d at 442. Although the Condominium Act contains a "strong consumer protection flavor," it is also targeted at regulating and governing the condominium form of property ownership. Id. at 437 (internal quotation marks and citation omitted).

Plaintiffs do not provide the Court with any authority, and this Court did not identify any, which stands for the proposition that TILA and the Condominium Act should be viewed through the same lens. It is abundantly clear to the Court that Large and Thompson were based upon the particular language of TILA as the First Circuit scrupulously analyzed TILA's rescission provision. See Large, 292 F.3d at 51-55; Thompson, 300 F.3d at 90 (noting that Large foreclosed the claim). While both TILA and the Condominium Act may contain a similar consumer protection flavor, the Court is not convinced that the right of rescission in TILA, a federal statute, is instructive in defining the right of rescission in the Condominium Act, a state

6

statute.

Furthermore, TILA's "unconditional" right of rescission provides that "the obligor <u>shall</u> have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction . . . ." 15 U.S.C. § 1635(a) (emphasis added); <u>see also</u> <u>Large</u> 292 F.3d at 51. The unconditional statutory right granted to individuals is without restriction, condition, or discretion and is clearly mandatory; i.e., the obligor "shall" have the right to rescind. 15 U.S.C. § 1635(a). The Condominium Act does not include TILA's mandatory language in describing a purchaser's ability to cancel a purchase and sales agreement. The Condominium Act provides that "the purchaser, before conveyance, <u>may</u> cancel the contract" if within ten (10) days after first receiving the public offering statement he or she takes certain action. R.I.G.L. § 34-36.1-4.08(a) (emphasis added). Generally, under Rhode Island statutory construction, the word "may" connotes a discretionary or permissive provision rather than a mandatory one. <u>See generally</u> <u>Quality Court Condominium Association v. Quality Hill Development Corp.</u>, 641 A.2d 746 (R.I. 1994). Furthermore, the commissioners' comments to § 34-36.1-4.08 provide that

> the requirement . . . that a purchaser be provided with subsequent amendments to the public offering statement during the period between execution of the contract for purchase and conveyance of the unit <u>does not, in itself, extend the [10 day] period</u>. Indeed, the delivery of such amendments is required even if the [10 day] period has expired. The purpose of this requirement is to assure that purchasers of units are advised of any <u>material</u> change in the condominium which may affect their sales contracts under general law.

R.I. Gen. Laws § 34-36.1-4.08 Commissioners' Comments at ¶ 4 (emphasis added).[4] Thus, this

---

[4] The commissioners' comments to the Condominium Act provide "guidance as to the intent of the [L]egislature in adopting this chapter unless the statutory language shall clearly express otherwise in which case the statutory language shall prevail." <u>IDC II</u>, 870 A.2d at 437 n.1 (internal quotation marks and citation omitted).

Court concludes that the pertinent language of § 34-36.1-4.08(a) includes a discretionary and conditional variable that removes it from any meaningful comparison to TILA's expressly stated unconditional right of rescission. Consequently, Plaintiffs' reliance on Large and Thompson is unavailing.

Plaintiffs' declaratory judgment claim asks this Court to determine Plaintiffs' rights pursuant to the purchase and sales agreements. Plaintiffs do not dispute that they signed the purchase and sales agreements containing the arbitration provision. Plaintiffs do not make any independent challenge to the arbitration provision. The arbitration provision applies to "any and all disputes . . . arising out of" the purchase and sales agreement including "statutory causes of action." Amended Complaints, Exhibit A § 13. A determination of the parties' rights pursuant to the purchase and sale agreements is certainly a dispute arising out of the purchase and sales agreements. Thus, Plaintiffs' declaratory judgment claim asking this Court to declare that Plaintiffs have a right to cancel the purchase and sales agreements is a matter for arbitration. See generally Campbell, 407 F.3d at 552 (party seeking to stay action or compel arbitration must show (1) valid agreement to arbitrate, (2) movant entitled to invoke arbitration provision, (3) other party is bound by provision, and (4) claim asserted is within provision's scope).

Plaintiffs' also claim that the purchase and sales agreements are illusory because Defendants had sole control over the setting of the closing dates for the sales thus imposing no real obligation on Defendants. Once again, Plaintiffs do not make any independent challenge to the arbitration provision. This claim is a challenge to the purchase and sales agreements as a whole, and thus, because the dispute aries out of the purchase and sales agreements, it is also subject to the mandatory arbitration provision.

8

Insofar as courts "may dismiss, rather than stay, a case when all of the issues before the court are arbitrable," the instant case will be dismissed without prejudice. <u>Bercovitch v. Baldwin School Inc.</u>, 133 F.3d 141, 156 n.21 (1st Cir. 1998).

V. Conclusion

For the reasons stated above, Defendants' motions to compel arbitration are GRANTED. Defendants' motions to dismiss without prejudice are also GRANTED.

SO ORDERED

_____
Mary M. Lisi
Chief United States District Judge
May 18, 2010